IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARY R. CHAMBERLAIN, ) | |
| ) | |
| Plaintiff ) | Civil No. 05-6208-TC |
| ) | |
| v. ) | FINDINGS AND |
| ) | RECOMMENDATION |
| JO ANNE B. BARNHART, ) | |
| ) | |
| ) | |
| Defendant ) | |

KATHRYN TASSINARI
ROBERT BARON
Cram, Harder, Wells & Baron
474 Willamette, Suite 200
Eugene, Oregon 97401
    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

TERRYEE E. SHEA
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

COFFIN, Magistrate Judge:

Plaintiff Mary R. Chamberlain seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). For the reasons below, I recommend the case be remanded for further proceedings.

## BACKGROUND

Born in 1939, Chamberlain completed high school. Tr. 75, 94.[1] Between 1985 and 1997 Chamberlain worked as a computer store manager and mobile home park manager. Tr. 89, 102.

Chamberlain alleges disability since July 6, 1997 due to low back pain, leg pain, and feet pain. Tr. 88. Her claim was initially denied and a hearing was held before an Administrative Law Judge (ALJ). The ALJ made an unfavorable decision on April 27, 2000. Tr. 21-25. Chamberlain appealed and the case was remanded by the court for reconsideration of Chamberlain's symptom testimony. Tr. 295. The ALJ issued a second unfavorable decision on April 26, 2005. 243-257. Tr. Chamberlain seeks review of this finding.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Chamberlain challenges the ALJ's evaluation of the evidence and her conclusions at step four.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on December 28, 2005 (Docket #5).

2 - FINDINGS AND RECOMMENDATION

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four or work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Id.* If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566,

3 - FINDINGS AND RECOMMENDATION

404.1520(g).

## THE ALJ'S FINDINGS

In her 2005 decision, the ALJ found Chamberlain not "not totally credible" regarding her limitations established on or before December 31, 1999. Tr. 256. The ALJ found Chamberlain's degenerative disc disease with mild disc bulging a severe impairment. Tr. 256. The ALJ's RFC assessment encompassed light work on or before December 31, 1999. Tr. 256.

At step four, the ALJ found that Chamberlain's RFC did not preclude her from performing her past relevant work as a mobile home park manager or computer store manager. Tr. 256. The ALJ solicited testimony from a vocational expert who confirmed that Chamberlain could return to this work. Tr. 21. Accordingly, the ALJ determined that Chamberlain was not disabled under the Act at any time through the date of her decision. Tr. 256 - 257.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986)). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not

4 - FINDINGS AND RECOMMENDATION

credible. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Chamberlain contends the ALJ arrived at an inaccurate RFC assessment because she improperly rejected Chamberlain's testimony and improperly evaluated the medical evidence. Chamberlain subsequently claims the ALJ made an improper step four finding because the ALJ solicited vocational expert testimony based upon an inaccurate RFC calculation. Chamberlain also contends the ALJ failed to properly assess her daughter's's testimony.

### I. Chamberlain's Credibility

Chamberlain asserts the ALJ failed to provide "clear and convincing" reasons for rejecting her testimony. Plaintiff's Opening Brief, 16. Specifically, Chamberlain claims the ALJ erred by rejecting her alleged fibromyalgia diagnosis and reported symptoms. Chamberlain also suggests the ALJ erred in suggesting her application was motivated by secondary gain. This court previously remanded the present case to the ALJ in November 2002 for consideration of Chamberlain's testimony, specifically regarding Chamberlain's reported effects of fatigue upon her work, discomfort caused by carrying heavy objects, pain with sitting and standing, and intermittent burning in her feet and legs. Tr. 295.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing credibility, the ALJ may consider objective

medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may not disregard testimony "solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Social Security Administration*, __ F.3d ____, 2006 WL 3041106 at *3 (9th Cir. 2006). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Smolen*, 80 F.3d at 1284.

Once a claimant shows evidence of an underlying medical impairment, unless there is evidence of malingering, the ALJ must show clear and convincing reasons for disregarding the claimant's testimony. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citing *Cotton v. Bowen*, 700 F.2d 1043, 1047 (9th Cir. 1986)). Credible testimony reflecting pain and symptoms stemming from a medically established impairment should be incorporated into the claimant's RFC determination. *See Smolen*, 80 F.3d at 1285, 20 C.F.R. §§ 404.1512(b)(3).

As discussed below, no medical evidence shows that Chamberlain has fibromyalgia. Chamberlain's *Cotton* argument that the ALJ improperly considered her fibromyalgia symptom testimony therefore fails.

Similarly, the ALJ found no medical evidence definitively establishing significant neuropathy and no medical evidence suggests that Chamberlain must soak her feet. Tr. 253. Chamberlain additionally testified that her heel pain "only lasted for several months" and resolved by the time of her hearing. Tr. 577. The ALJ was free to disregard such unsupported

symptom testimony. *Benton*, 331 F.3d at 1040 (citing *Cotton*, 700 F.2d at 1047).

The ALJ also found Chamberlain's testimony regarding insufficient sleep unconvincing and found no medical evidence supporting Chamberlain's alleged concentration difficulties. Tr. 251, 253. At her hearing, Chamberlain suggested she has difficulty sleeping due to sleep apnea. Tr. 613. No medical evidence supports this submission. No medical evidence supports any submission that Chamberlain is fatigued due to fibromyalgia. Chamberlain does not point to evidence supporting her alleged concentration difficulties, and no medical evidence supports such mental health limitations. Again, under the *Cotton* analysis, the ALJ is not required to consider symptom testimony unrelated to any underlying medical impairment. *Benton*, 331 F.3d at 1040 (citing *Cotton*, 700 F.2d at 1047).

The ALJ noted that Chamberlain's medical records are sparse, suggesting Chamberlain failed to seek treatment for her alleged impairment. This court clearly stated in the November 2002 remand order that Chamberlain could not be faulted for failing to seek treatment she testified that she could not afford. Tr. 293. In support of her finding, the ALJ noted that Chamberlain was denied Supplemental Security Income because she possessed "$50,000" in stocks and bonds. Tr. 253. Such evidence reasonably suggests Chamberlain could purchase health care and the findings should be sustained. *See* SSR 96-7p at *8.

Finally, the ALJ noted that Chamberlain offered "poor effort" in diagnostic testing and examination of her alleged neuropathic symptoms. Tr. 253. Such self limiting in testing may support a negative credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 953 (9th Cir. 2002).

In conclusion, the ALJ provided sufficient reasons for failing to credit Chamberlain's

7 - FINDINGS AND RECOMMENDATION

testimony that she must soak her feet and cannot work due to fatigue and concentration difficulties. Because Chamberlain testified that she can carry ten pounds and "be on her feet," Chamberlain does not establish how her alleged foot and back pain interferes with her ability to perform light work. Tr. 48. For these reasons, the ALJ's credibility determination should be sustained.

## II. The ALJ's Step Two Finding

Chamberlain suggests the ALJ failed to find her alleged fibromyalgia and peripheral neuropathy severe impairments. Chamberlain bases this submission upon the opinions of Drs. Jackson, Fechtel, Longnecker, and Hudson.

Generally, a treating physician is accorded greater weight than an examining physician, and an examining physician is accorded greater weight than a reviewing physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 2003). Here the ALJ appropriately reviewed treating, examining, and reviewing sources. The ALJ did not discredit supported findings by Chamberlain's treating or examining physicians. The ALJ is responsible for evaluating medical evidence and resolving any evidentiary ambiguities or conflicts. *Edlund*, 253 F.3d at 1156, *Magallanes*, 881 F.2d at 750.

### a. Dr. Jackson

Dr. Jackson, a neurologist, twice treated Chamberlain between September 1997 and June 1998. Tr. 143-151. The record contains four letters Jackson submitted to Chamberlain's attorney between September 1997 and June 1998, three pages of clinical notes, and Jackson's deposition relating to Chamberlain's automobile accident litigation. Tr. 143-151, 350-425. Jackson's letters

suggest Chamberlain exhibited no radiculopathy or nerve root problems. Tr. 143, 150. Jackson found a bulging spinal disc at L4-L5 and some degenerative disc changes. Tr. 150. Jackson found normal spinal function with a mild restriction in lumbar flexion and diagnosed a traumatic injury to Chamberlain's left heel. Tr. 150. Jackson later wrote that he found evidence of tarsal tunnel syndrome, but his clinical notes suggest Chamberlain's tarsal tunnel dysfunction was "mild." Tr. 143, 148. Jackson's neurological testing showed "borderline" slowed signaling with "poor effort." Tr. 148. A concurrent needle exam revealed intact sensation. *Id.*

The ALJ cited Jackson's letters and notes. Tr. 249. She included Jackson's findings regarding Chamberlain's bulging lumbar discs. *Id.* Contrary to Chamberlain's submission, Jackson did not find that Chamberlain had fibromyalgia. Jackson stated that Chamberlain had a "myofascial disorder," or muscular pain limited to her low back. Tr. 143. Jackson later clearly stated that such a disorder was not equivalent to a fibromyalgia diagnosis. Tr. 405. Chamberlain's submission regarding Jackson's fibromyalgia diagnosis is unsupported by the record and fails for this reason.

Additionally, also contrary to Chamberlain's submission, Jackson's notes showed only "mild" indications that Chamberlain demonstrated tarsal tunnel syndrome. Tr. 148. These notes do show "borderline" studies with no nerve denervation in a needle exam. Tr. 148. These notes do not support Jackson's statement that Chamberlain had a "generalized neuropathy." Tr. 143. Nor do these notes support Jackson's later statement that Chamberlain's tarsal tunnel disorder was "significant." Tr. 365. The ALJ noted that this finding was made without patient contact. Tr. 249.

9 - FINDINGS AND RECOMMENDATION

An ALJ may reject a physician's opinion unsupported by clinical notes. *Thomas*, 278 F.3d at 953, *Bayliss*, 427 F.3d at 1216. The ALJ appropriately disregarded Jackson's opinion regarding Chamberlain's alleged neuropathy and the severity of her tarsal tunnel syndrome. For the reasons above, the record supports the ALJ's review of Jackson's findings. The ALJ's findings regarding Jackson should be sustained.

b.     **Dr. Fechtel**

The ALJ did not discuss Dr. Fetchel's opinion. Chamberlain submits that Fechtel should be entitled to "special consideration regarding the diagnosis of neuropathy." Plaintiff's Opening Brief, 15.

Dr. Fechtel treated Chamberlain between October 2001 and April 2002. In October 2001 Fechtel reviewed Chamberlain's MRI and conducted an "unremarkable" examination. Tr. 317-318. Fechtel did not conduct independent neurological testing. Fechtel later noted an "impression" of "probable peripheral neuropathy," but his review of Chamberlain's nerve studies repeated Jackson's "borderline or normal" findings. Tr. 317. Fechtel again noted that sensory examination showed no denervation. *Id.* In April 2002, his records show that Chamberlain's reported leg numbness improved. Tr. 316. Fechtel's notes corroborate Jackson's inability to definitively diagnose peripheral neuropathy. As such, these notes do not establish significant or probative evidence. An ALJ is not required to discuss every instance of such evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ's omission of Fechtel's notes was not erroneous and should not be reversed.

    **c.**    **Dr. Longnecker**

Dr. Longecker, an orthopedist, reviewed Chamberlain's treatment notes produced by Dr. Jackson. The record contains a one page letter summarizing Jackson's notes and adding that in an examination by Longnecker, Chamberlain reported back pain and numbness in her feet. Tr. 349. Longnecker made no independent findings. No supporting clinical notes accompany Longnecker's letter. Chamberlain bears the burden of producing such notes. *Tackett*, 180 F.3d at 1098.

The ALJ reiterated Longnecker's letter and noted that the record does not support Longnecker's description of lumbar "bulging defects," as opposed to a disc bulge. Tr. 250. Chamberlain submits that Longnecker's neuropathy diagnosis should be credited. Plaintiff's Opening Brief, 13. Longnecker only stated that he felt Chamberlain's reported numbness was neuropathy, without supporting evidence. Tr. 349. The ALJ's analysis of Longnecker's opinion should be sustained.

    **d.**    **Dr. Hudson**

Dr. Hudson, a rheumatologist, examined Chamberlain once in June 2000. He concluded Chamberlain "does seem to have a localized form of fibromyalgia syndrome, most likely myofascial pain syndrome." Tr. 229. Chamberlain's fibromyalgia trigger-point examination did not confirm a fibromyalgia diagnosis. Tr. 229. The ALJ noted this in her discussion. Tr. 251.

There is no bright line establishing the distinction between a treating or reviewing physician. One visit may suffice if the physician is employed to cure or treat the patient. *Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003). Here, Hudson suggested a trial of Sinemet

11 - FINDINGS AND RECOMMENDATION

medication and asked that Chamberlain return in six weeks. Tr. 229. Because Chamberlain testified that she did not take the medication (tr. 38, 41) and the record shows no subsequent visits, Hudson is evaluated as an examining physician.

Regardless, Hudson's notes do not establish a fibromyalgia diagnosis. Jackson, who was a treating physician, stated that fibromyalgia and a myofascial pain disorder are not the same condition. Tr. 405. As a treating physician, Jackson's opinion is entitled to greater weight than the unsupported opinion of an examining physician. *Benton*, 331 F.3d at 1036, *see also Bayliss*, 427 F.3d at 1216.

Additionally, the ALJ noted that Hudson's diagnosis was made after Chamberlain's December 31, 1999 date last insured. Tr. 253. An ALJ is not required to credit such diagnoses. *Tidwell*, 161 F.3d at 601; *see also Mayes v. Massinari*, 276 F.3d 453, 462 (9th Cir. 2001).

The ALJ should have based her analysis of Hudson's diagnosis of fibromyalgia upon treating physician Jackson rather than reviewing physician Dr. Bruton, but her analysis of Hudson's opinion is supported by the record and should be sustained.

In conclusion, the record supports the ALJ's evaluation of the evidence. Application of the treating physician's rule does not establish that Chamberlain is disabled. Chamberlain's submission regarding the ALJ's reliance upon reviewing physician Bruton fails. This court must affirm an ALJ's decision based upon the proper legal standards and supported by the evidence. *Batson*, 359 F.3d at 1193.

### III. Lay Witness Testimony

At Chamberlain's February 2005 hearing, the ALJ refused to hear testimony from her

daughter. Tr. 572-73. The Commissioner concedes this refusal was erroneous. Defendant's Brief, 9.

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d)(4); 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993). The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512. If an ALJ rejects lay witness testimony entirely, he must give reasons germane to the witness. *Nguyen*, 100 F.3d at 1467.

Recent jurisprudence has twice suggested that silent omission of lay witness testimony regarding a claimant's functioning in a work environment is not harmless. *Robbins*, __ F.3d at ____, 2006 WL 3041106 at *5, *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Because the ALJ failed to adhere to the appropriate standard for reviewing lay witness testimony, this case should be remanded for hearing and consideration of Chamberlain's daughter's testimony.

## IV. The ALJ's Step Four Finding

Chamberlain suggests the ALJ erred in finding she could return to her past relevant work as an RV park manager and computer store manager. In considering whether Chamberlain could return to this work, the ALJ solicited testimony from a vocational expert (VE). Tr. 603-614. The ALJ asked the VE if Chamberlain could perform her past work if restricted to light work. Tr.

603. The VE explained that, because Chamberlain was a manager in both businesses, she would theoretically have flexibility regarding assignment of physical duties. Tr. 605. With this provision, the VE suggested Chamberlain could work as an RV park manager or computer store manager while limited to light work. Tr. 505, 608, 610.

In establishing whether a claimant may return to her past relevant work, it is appropriate to consider the claimant's work as she performed it, rather than relying upon generic job descriptions. SSR 82-61 *1-2 (available at 1982 WL 31387), SSR 82-62 *3 (available at 1982 WL 31386). The nature of a claimant's past relevant work may be established via claimant's testimony or the *Dictionary of Occupational Titles*. SSR 82-62 *3. Here, the VE testified that Chamberlain's work as a mobile home and computer store manager, as she performed it, was medium level work. Tr. 604-605. Such work is incompatible with the ALJ's RFC restricting Chamberlain to light work. For this reason, the ALJ's step four analysis should not be sustained.

## REMAND

After finding the ALJ erred in her decision denying Chamberlain's application for benefits, the court must determine the proper remedy. This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited as true and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 (citing *Smolen*, 80 F.3d at 1292). Here, it is impossible to credit Chamberlain's daughter's testimony as the ALJ refused it.

Further proceedings are necessary for the ALJ to take and properly evaluate the improperly rejected testimony of Chamberlain's daughter, reassess Chamberlain's RFC if necessary, and obtain additional VE testimony regarding Chamberlain's ability to perform work in the national economy.

## **RECOMMENDATION**

This court finds that the Commissioner's decision that Chamberlain did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is not based upon correct legal standards and is not supported by substantial evidence. As such, the Commissioners' decision should be reversed , and the Commissioner's motion to remand should be granted for consideration of Chamberlain's daughter's testimony, an RFC calculation including


any additional limitations established by that testimony, and VE testimony addressing Chamberlain's ability to perform other work in the national economy.

.

Dated this  6  day of November, 2006.

                                                                                       _____
                                                                                       Thomas M. Coffin
                                                                                      United States Magistrate Judge